FILED
2019 Jul-30 PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TERRY MICHAEL ISBELL, } <br> } <br> Plaintiff, } <br> } <br> v. } <br> } <br> NANCY A. BERRYHILL, } <br> Acting Commissioner of Social } <br> Security, } <br> } <br> Defendant. } | Case No. 4:18-cv-0258-RDP |

## MEMORANDUM OF DECISION

Plaintiff Terry Isbell ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the documents submitted by the parties, the court finds the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

On June 26, 2014, Plaintiff protectively applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability as of March 13, 2014. (R. 81). The Social Security Administration ("SSA") initially denied Plaintiff's application. (R. 92). On November 18, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 98). That request was granted (R. 100), and Plaintiff received a hearing before ALJ Bruce W. MacKenzie on August 2, 2016. (R. 110). On November 4, 2016, the ALJ issued an unfavorable decision, finding Plaintiff "has not been under a disability within the meaning of the Social Security Act from March 13, 2014, through the date of this decision." (R.

1

10). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision (R. 1), the ALJ's decision became the final decision of the Commissioner, and, therefore, a proper subject for this court's review.

## II. Statement of Facts

Plaintiff's application alleges disability due to injuries received in two car accidents. Plaintiff was 34 years old on the alleged onset date and 36 years old at the time of the ALJ's decision. (R. 21, 147). He completed two years of college and has work experience as a boat salesman, machine shop technician, warehouse worker, and restoration technician in water and fire damage. (R. 47, 168, 184). He alleges disability due to knee arthritis, knee pain, a back and neck injury, depression, anxiety, and hip numbness. (R. 167).

On July 11, 2013, Plaintiff was involved in a motor vehicle accident. (R. 264). He sought treatment in the emergency room for acute lumbar strain, right knee contusion, and chest wall contusion. (*Id.*). A month later, Plaintiff underwent abrasion arthroplasty[1] of the patella with chondroplasty of the trochlear groove[2] and partial medial meniscectomy.[3] (R. 260). Dr. Stephen Cowley diagnosed Plaintiff with severe chondromalacia of the patellofemoral joint with grade-4 lesion, infrapatellar spur, and tear of the medial meniscus. (R. 260).

---

[1] Abrasion arthroplasty is similar to drilling. Instead of drills or wires, high speed burrs are used to remove damaged cartilage and reach the subchondral bone. Abrasion arthroplasty can be done with an arthroscope. *See* https://orthoinfo.aaos.org/en/treatment/articular-cartilage-restoration/ (last accessed July 18, 2019).

[2] Chondroplasty is an option in cases of mild to moderate cartilage wear. Arthroscopic chondroplasty is treated completed with arthroscopy. *See* https://www.arlingtonortho.com/conditions/knee/knee-arthroscopic-chondroplasty/ (last accessed July 18, 2919).

[3] An arthroscopic meniscectomy is a procedure to remove some or all of a meniscus from the femoral joint of the knee. *See* https://www.physio-pedia.com/Arthroscopic_Meniscectomy (last accessed July 18, 2019).

On March 14, 2014, Plaintiff was injured in a second motor vehicle accident. (R. 269). He was admitted to the hospital for evaluation and pain control in his head, neck, back, and knee. (*Id.*). Plaintiff was released the next day with a prescription for Norco. (*Id.*).

Later in March 2014, Plaintiff sought treatment with Dr. Donald H. Slappey, Jr., an orthopedic surgeon at OrthoUSA. (R. 342, 344). Dr. Slappey listed Plaintiff's active problems as low back pain, cervicalgia,[4] and arthralgia[5] (knee, patella, tibia, and fibula). (R. 351). Roughly a week later, Dr. Slappey noted that an MRI of Plaintiff's cervical spine showed a protrusion at C6-7, an MRI of the lumbar spine showed a protrusion at L5-S1, and an MRI of the right knee showed a torn medial meniscus. (R. 349).

On May 7, 2014, Plaintiff underwent a right knee arthroscopic partial medial meniscectomy, patellofemoral chondroplasty, and removal of loose bodies at OrthoUSA. (R. 353). A week later, Plaintiff followed-up with Dr. Slappey. During that visit, Dr. Slappey noted the right knee had a good range of motion. (R. 363). On June 4, 2014, during another post-surgery visit, Dr. Slappey reported Plaintiff's knee was gradually improving with therapy. (R. 361). Dr. Slappey also indicated that Plaintiff's cervical spine was limited in rotation and the lumbar spine was tender to palpation. (*Id.*).

On July 4, 2014, Plaintiff indicated that a typical day involved taking a shower, doing light housework, and completing therapy exercises. (R. 174). He stated he needs assistance getting into and out of the bathtub, getting in and out of a vehicle, and putting on his socks. (*Id.*). He listed his housework chores as laundry and light cleaning, venturing outside once or twice a day, and

---

[4] Cervicalgia is a term used to describe pain or significant discomfort in the neck, especially at the back and/or sides. *See* https://www.verywellhealth.com/cervicalgia-definition-296573 (last accessed July 18, 2019).

[5] Arthralgia is a term to describe pain or significant discomfort in joints. *See* https://www.ncbi.nlm.nih.gov/books/NBK303/ (last accessed July 18, 2019).

3

shopping for groceries, household items, and medicine roughly once a week. (R. 175-76). Social activities were listed as talking and visiting, playing board games, and going out to eat approximately once a week. (R. 178). Plaintiff's wife Amanda Isbell indicated on a separate form that Plaintiff's main chores consist of daily trash and laundry. (R. 196).

During another follow-up visit on August 15, 2014, Dr. Slappey noted Plaintiff was doing better evidenced by full range of motion in the right knee. (R. 356, 357). Although Dr. Slappey released Plaintiff regarding his right knee, he noted Plaintiff was scheduled for a procedure on his back. (R. 356, 357).

Plaintiff was examined by consultative examiner Dr. William Russell May on September 27, 2014. (R. 282). Plaintiff complained of arthritis and chronic pain in his right knee. (R. 282). Plaintiff also endorsed bulging disc in c-spine and lumbar spine with significant back pain, weakness in the neck, spasms down into the left arm, and some numbness and tingling in the right thigh to the back of the right knee. (R. 282). Plaintiff stated he did not use an ambulatory device to get around, could walk up to a mile on level ground, could dress himself, and could climb stairs without difficulty. (R. 283).

Dr. May noted Plaintiff could ambulate without difficulty and assistive device. (R. 284). Plaintiff was able to get up and out of the chair and on and off the examination table without difficulty. (*Id.*). His gait was normal, and he could perform tandem heel walking. (*Id.*). However, Plaintiff was not able to walk on his toes or heels, and had difficulty squatting, bending over and touching his toes. (*Id.*). Based on the evidence, Dr. May found Plaintiff has limitations, including limitations in occasionally walking in an 8-hour workday (occasionally defined as very little up to one-third of an eight-hour workday). (R. 285).

4

On November 12, 2014, Plaintiff underwent posterior disc decompression at L4-5 and L5-S1 and laser thermal ablation at L3, L4, and L5 on the right, performed by Dr. Robert W. Nesbitt. (R. 324, 325). Six days later, the Plaintiff reported that numbness and tingling in his legs had significantly improved. (R. 354).

On September 1, 2015, Cooper Green Mercy clinic diagnosed Plaintiff with mitral valve prolapse and pain in the back and right knee. (R. 298). At the primary care clinic, Dr. Max Michael III noted Plaintiff's right knee and upper and lower back pain were not controlled with his current over-the-counter medications. (R. 298).

On October 6, 2015 during a follow-up visit, Dr. Michael noted the Plaintiff felt better with symptoms well controlled with Norco 7.5 and Flexeril, with no side effects. (R. 297). Although Plaintiff returned to the clinic with complaints of right hip pain on December 8, 2015, Dr. Michael noted the pain was well controlled with the current medications, and Plaintiff was a bit more active. (R. 296). For almost six months, Dr. Michael noted Plaintiff's pain was controlled despite occasional flare-ups in the back and right knee. (R. 295, 302).

In July 2016, Dr. Michael conducted a physical capacities evaluation. (R. 303). He found Plaintiff can stand and walk for a combined 2 hours and sit for 2 hours total in an entire 8-hour day; Plaintiff required a cane and a right knee brace to ambulate even minimally in a typical workday; and the most reasonable lifting and/or carrying expectations for Plaintiff was 5 pounds occasionally or less. (R. 303). Dr. Michael noted Plaintiff could never perform pushing and pulling movements, climbing, balancing, bending, and stooping. (R. 303). He also noted Plaintiff could occasionally perform gross manipulation, fine manipulation, and reaching (including overhead). (R. 303).

In the clinical assessment of pain, Dr. Michael indicated Plaintiff's pain would be distracting to adequate performance of daily activities or work. (R. 304). The physical activity would increase pain to such an extent bedrest and/or medication would be necessary. (R. 304). Furthermore, the side effects of the prescribed medication would include distraction, inattention, and drowsiness. (R. 305). Additionally, Dr. Michael conducted a clinical assessment of fatigue and weakness. (R. 306). He found fatigue/weakness would negatively affect adequate performance of daily activities or work. (*Id.*). Physical activity greatly increased fatigue/weakness, and to such a degree as to cause total abandonment of tasks. (*Id.*).

### III. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §404,1520(a)(4)(i). "Substantial work activity" is work activity involving significant physical and mental activities. 20 C.F.R. §404.1572(a). "Gainful work activity" is work done for pay or profit. 20 C.F.R. §404.1572(b). If the ALJ finds the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. §404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. §404, Subpart P, Appendix 1. *See* 20 C.F.R.

§§404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, he may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. §404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant can perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. §404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§404.1520(g), 404.1560(c).

Here, the ALJ made a determination that: (1) the claimant meets the insured status requirements of the Social Security Act through September 30, 2019; (2) the claimant has not engaged in substantial gainful activity since March 13, 2014, the alleged onset date of disability (20 CFR 404.1571 *et seq*); (3) the claimant has the severe impairments of status post right knee and lumbosacral spine surgeries (20 CFR 404.1520 (c)); (4) the claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),

404.1525 and 404.1526); (5) the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain exertional and non-exertional functional limitations; and (6) the claimant is capable of performing his past relevant work as a sales representative boat/marine supplies. (R. 12-21).

Based upon these findings, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from March 13, 2014 through the date of this decision. (R. 21). The decision of the ALJ is challenged here.

### IV. Plaintiff's Argument for Reversal

Plaintiff challenges the ALJ's findings that he was not disabled from March 13, 2014 through the date of the decision. He argues that the ALJ erred by: (1) failing to accord proper weight to the opinion of Dr. Max Michael of Cooper Green Mercy Health, (2) finding that he can perform past work; (3) failing to consider all of Plaintiff's severe impairments; and (4) finding that Plaintiff does not meet Listing 1.04.[6] (Pl. Mem., Doc. #11 at 2). The court addresses each argument, in turn.

### V. Standard of Review

The issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §405(g) mandates the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not

---

[6] The Plaintiff also argues that the ALJ failed to properly consider her "excellent work history;" however, neither the Eleventh Circuit nor the SSR requires an ALJ to consider excellent work history in the determination of Plaintiff's subjective complaints. *See Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *7 (N.D. Ala. Mar. 20, 2019).

8

reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges judicial review of the ALJ's findings is limited in scope, the court also notes review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

Plaintiff "bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §416.912(a)). Upon careful review of the entire record, the court concludes the Plaintiff has not met this burden. Thus, the court holds the Commissioner's decision is supported by substantial evidence, is in accordance with applicable law, and is due to be upheld.

### A. The ALJ Properly Afforded Little Weight to the Opinion of Treating Physician Dr. Max Michael

Plaintiff contends that the ALJ erred by failing to give substantial or considerable weight to the opinion of his treating physician, Dr. Max Michael. (Pl. Mem., Doc. #11 at 14-18, 303-05). For the reasons explained below, this argument fails.

An ALJ's weighting of a medical source's opinion depends on the medical source's relationship with the claimant, the evidence the medical source presents to support his opinion,

9

and the degree of consistency between the medical source's opinion with the medical evidence in the record as a whole. See 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight unless good cause is shown for not crediting it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (2004); *Winschel v. Comm'r*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ properly discounted Dr. Michael's opinion as inconsistent with his own treatment notes and other evidence of record. (R. 19). Dr. Michael found that Plaintiff had significant limitations which would distract him from being able to work, including significant side effects from medication used to treat pain. (R. 304, 305). However, Dr. Michael's treatment notes consistently state that Plaintiff's pain is well-controlled by prescription medication with no reported side effects. (R. 295-98, 302). Moreover, Dr. Michael opined that Plaintiff had significant limitations in lifting, walking, sitting, and standing, but he provided no rationale for this opinion. To the contrary, Dr. Michael's notes indicate that Plaintiff was more active and feeling better. Because Dr. Michael's opinion is not bolstered by his own evidence, it is not entitled to substantial weight. *See Williams v. Comm'r*, 679 F. App'x 971, 972 (11th Cir. 2017) (concluding the ALJ had good cause to reject the opinion of claimant's treating physician regarding her inability to sit at a desk for more than one hour because the opinion was inconsistent with the physician's examination findings); *Barnum v. Comm'r,* 555 F. App'x 903, 905 (11th Cir. 2014) (finding substantial evidence supported the ALJ's decisions to discount the treating physician's opinion where the medical exams showed normal findings); *Brown v. Comm'r*, 442 F. App'x 507, 512

(11th Cir. 2011) (finding the ALJ had a good cause not to give controlling weight to the doctor's opinions because the opinions were conclusory and reported on forms that did not reference treatment records or provide adequate explanations).

Dr. Michael's opinion is also inconsistent with other medical evidence of record. (R. 18). During a consultative examination, Plaintiff exhibited normal gait without the use of an assistive device. (R. 284). He was able to get out of a chair and on and off the examination table without difficulty. (*Id.*). He performed tandem heel walking and demonstrated nearly full strength in the muscles of his right leg, along with intact sensation. (*Id.*). Plaintiff's range of motion was generally within normal limits, aside from some mild restrictions in his lumbar spine. (R. 282-85). Plaintiff was limited to walking occasionally (up to one-third of the day) during the workday, but was not otherwise restricted. (R. 285). Because Dr. Michael's opinion is not bolstered by other medical evidence, it is not entitled to substantial weight. *See Siverio v. Comm'r*, 461 F. App'x 869, 872 (11th Cir. 2012) (concluding the ALJ's decision to discount the treating physician's opinion was supported by other medical evidence of record that contradicted the opinion).

Finally, Plaintiff's reported daily activities also undermine Dr. Michael's opinion. Plaintiff indicated he engaged in some light housework, prepared meals, drove, watched television, and read. (R. 174-78). In the function report completed before his back surgery, he reported he performed physical therapy exercises, visited friends, played board games, and went shopping. (R. 176-78). Plaintiff's wife noted he also took out the garbage and did laundry. (R.196). This ability to perform a wide range of activities is inconsistent with Dr. Michael's opinions of severe restrictions. *See Saternus v. Comm'r*, 662 F. App'x 883, 886 (11th Cir. 2016) (determining that the ALJ's decision to accord little weight to the doctor's opinion was supported by substantial evidence, in part because the opinion conflicted with claimant's description of his daily activities);

*Magill v. Comm'r,* 147 F. App'x 92, 94 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's testimony regarding her daily activities contradicts that opinion.").

For all the foregoing reasons, the ALJ articulated good cause, supported by substantial evidence, for according little weight to Dr. Michael's opinions.

> **B.     The ALJ's Decision That Plaintiff Can Perform Past Work is Proper and Supported by Substantial Evidence.**

Plaintiff argues that the ALJ failed to make a finding of the physical requirements and demands of past work and failed to consider all duties of past work in combination with other impairments. (Pl. Mem., Doc. #11 at 18-22). For the reasons explained below, this argument fails.

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. To support a conclusion that a claimant is able to return to her past relevant work, the ALJ must consider all duties and evaluate the claimant's ability to perform them in spite of her impairments. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).

Where there is no evidence of the physical requirements and demands of the claimant's past work, and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform her past relevant work. *Nelms,* 803 F.2d at 1164; *see also Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). Here, however, the ALJ used a vocational expert, the *Dictionary of Occupational Titles* (DOT), medical records, and Plaintiff's own testimony and in determining that Plaintiff could perform his past relevant work. (R. 15-18, 84-90, 202-05). These sources are sufficient to satisfy the duty. *See e.g., Waldrop*

*v. Comm'r*, 379 F. App'x 948, 952-53 (11th Cir. 2010) (rejecting claimant's failure to develop the record argument where the record demonstrated the ALJ considered the DOT and VE's testimony).

Record medical evidence bolsters this finding. As explained by the ALJ, after knee surgery Plaintiff regained full range of motion and exhibited normal gait without the use of an assistive device. (R. 16-17, 353, 356). Plaintiff demonstrated nearly full strength in the muscles of his right leg, along with intact sensation. (R. 285). After back surgery in November 2014, Plaintiff reported improvement in his symptoms and later, full range of motion in the extremities. (R. 16, 293, 317, 324-25, 254). This medical evidence, showing Plaintiff's symptoms improved with treatment and showing normal examinations, supports the ALJ's finding that Plaintiff could perform a modified range of light work. *See Herron v. Comm'r*, 649 F. App'x 781, 784-85 (11th Cir. 2016) (upholding the ALJ's findings that claimant retained an RFC for light work where there had been successful surgery); *Packer v. Comm'r*, 542 F. App'x 890, 892 (11th Cir. 2013) (concluding that substantial evidence supported the RFC whether medical sources indicated functioning in pertinent areas was normal or only mildly restricted).

In order to determine whether Plaintiff could perform his prior work based on his RFC, the ALJ obtained testimony from a vocational expert. An ALJ may properly rely on a VE's testimony to determine the demands of a claimant's former work and to determine whether a claimant can perform past relevant work. See 20 C.F.R. § 404.1560(b)(2). Although Plaintiff detailed his job duties as a boat/marine representative required him to lift and carry "boxes, displays, boat and auto parts, and cleaning supplies" (R. 187), this is not how the job is generally performed. As generally performed, the job involves work at the light exertional level, including selling boat and marine equipment and supplies, explaining construction and performance of boats and other marine equipment, advising owners on the selection of new equipment and repair issues, and other similar

13

sale representative duties. *See Dictionary of Occupational Titles* §273.357-018, 1991 WL 672468; *see* also SSR 82-61, 1982 WL 31387, at *2 (stating DOT "descriptions can be relied upon…to define the job as it is usually performed in the national economy"). Even assuming Plaintiff was unable to perform his past work as actually or specifically performed in the past, he has failed to show he cannot perform it as generally performed in the national economy. *See Levie v. Comm'r*, 514 F. App'x 829, 831 (determining substantial evidence supported a finding that, although he could not perform all job duties previously performed, claimant was able to perform the job as generally performed in the national economy).

Regardless, even if there was some error made with respect to the finding that Plaintiff could perform his past relevant work that error was harmless because the ALJ also concluded that Plaintiff could perform other work. (R. 20-21). The ALJ presented the VE with a hypothetical encompassing all of Plaintiffs supported limitations as identified in the RFC. (R. 74-78). The VE testified that other jobs existed in the national economy that Plaintiff could perform, including mail sorter, ticket seller, and label coder. (R. 75). Because the hypothetical question posed to the VE was consistent with the ALJ's RFC finding, the VE's testimony provided substantial evidence to support the ALJ's determination that Plaintiff was not disabled. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that the ALJ may rely on VE testimony as substantial evidence to support a finding of not disabled).

For the foregoing reasons, substantial evidence supports the ALJ's residual functional capacity and step four findings.

## C. The ALJ Properly Considered All of the Plaintiff's Severe Impairments

Plaintiff contends that the ALJ erred by failing to consider neck pain and mitral valve prolapse as severe impairments. (Pl. Mem., Doc. #11 at 22-23). For the reasons explained below, this argument fails.

At step two of the sequential evaluation, the ALJ determined whether Plaintiff had a severe impairment, defined as an impairment significantly limiting the claimant's abilities to do basic work activities. 20 C.F.R. §404.1520(a)(4)(ii), (c), 404,1521(a). However, Plaintiff's neck pain and mitral valve prolapse were found to be non-severe. Plaintiff bears the burden to establish these conditions significantly limit his ability to perform basic work functions. 20 C.F.R. §§ 404.1520(a), (c), 404.1521(a); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987) (recognizing an impairment cannot be severe if it has only a minimal impact). This he has not done.

Plaintiff has not identified any medical evidence which establishes that these conditions amounted to more than a slight abnormality or had more than a minimal effect on his ability to work. Moreover, medical records show that Plaintiff retained full range of motion in his neck, along with good grip strength and manipulative skills in his hands. (R. 285). His pain was well-controlled with medication. (R. 295-97). He demonstrated normal heart sounds and pulses, with no respiratory distress. (R. 293, 295, 297). And, diagnoses and symptoms alone do not establish the existence of a severe impairment. *See* 20 C.F.R. §§404.1529(a) (noting statements about pain and other symptoms will not alone establish disability); *see also Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (recognizing a diagnosis alone is insufficient and claimant must show

the effect of the impairment on his ability to work). Plaintiff has not demonstrated that these conditions were severe impairments.[7]

### D. The ALJ Properly Determined that Plaintiff Did Not Satisfy Listing 1.04

At step three, the ALJ must determine whether a claimant's impairments meet or medically equal a Listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii). A claimant may establish disability if he proves that his impairments meet or equal a Listing. (*Id.*). In order to meet a Listing, a claimant must (1) establish that he has a diagnosed condition included in the Listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and the duration requirement. 20 C.F.R. § 404.1525(a)-(d). In order to equal a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1525(a)-(d). A diagnosis alone is insufficient to meet a Listing's criteria. *See Sullivan v. Comm'r*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a Listing's] criteria, no matter how severely, does not qualify."). Further, the symptoms must last or be expected to last for a continuous period of twelve months. *See* 20 C.F.R. § 404.1525(c)(4).

Plaintiff contends that his impairments meet Listing 1.04A, which covers "disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or spinal cord." (Pl. Mem., Doc. #11 at 23). Subsection A of Listing 1.04 requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

---

[7] In any event, whether these conditions represent additional severe impairments is irrelevant because the ALJ found in Plaintiff's favor at step two and proceeded to the other steps of the sequential evaluation process. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

16

20 C.F.R. pt. 404, subpt. P. app. 1, § 1.04A. The regulations also require "a longitudinal record" because "musculoskeletal impairments frequently improve with time or respond to treatment." *Id.* at § 1.00H.

Here, as correctly noted by the ALJ, there is no evidence nerve root compression. (R. 14-15). Plaintiff fails to argue otherwise.[8] (Pl. Mem., Doc. #11 at 23-28). Further, the longitudinal record evidences improvement over time. The ALJ noted that "claimant had positive straight leg raise and weakness in the right proximal leg when he was examined by Dr. May in September 2014, but this was prior to the claimant's lumbosacral spine surgery." (R. 15). After spine surgery, Plaintiff reported that the numbness and tingling in his legs had improved significantly. (R. 354). By April 2016, examination findings showed a normal gait, intact neurological responses, and full range of motion in the extremities. (R. 293).

Based on the foregoing, substantial medical evidence demonstrates that Plaintiff's impairment does not meet Listing 1.04A. *See Nance v. Comm'r*, 2018 WL 4184578 at * (N.D. Ala. Aug. 31, 2018) (finding that claimant's medical records provided substantial evidence that claimant did not meet Listing 1.04A); *Nettles v. Comm'r*, 2010 WL 3394666 at *5 (M.D. Fla. Aug. 26, 2010) (noting that the claimant must demonstrate the existence of every symptom in Listing 1.04A); *Cooper v. Comm'r*, 2019 WL 3097541 at *5 (M.D. Fla. June 28, 2019) (claimant did not point to any record evidence that would indicate nerve root compression characterized by

---

[8] Plaintiff simply regurgitates her medical records in her argument that she meets Listing 1.04A. (Pl. Mem., Doc. #11 at 23-28). This perfunctory argument is not properly before the court for review. "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted). Nevertheless, out of an abundance of caution, the court considers whether the ALJ's finding that Plaintiff did not meet Listing 1.04A is supported by substantial evidence.

neuroanatomic distribution of pain). On this issue, the decision of the Commissioner is due to be affirmed.

**VII. Conclusion**

The court concludes the ALJ's determination Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 30, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE